## PEORIA AND PEKIN UNION RAILWAY COMPANY v. CHICAGO, PEKIN AND SOUTHWESTERN RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 210.   Argued April 6, 1888. — Decided April 23, 1888.

A railroad company, all whose stock was owned by four other companies, whose roads connected, having obtained a lease of another connecting railroad, and improved the terminal facilities, made a contract with the four companies, by which they should have the use of its tracks and terminal facilities for fifty years, each paying the same fixed rent and certain terminal charges, and any other company with the same terminus might, by entering into a similar contract, acquire like privileges upon paying the same rent and similar charges; and demanded the making of such a contract by the receiver of another company, who previously had the use of the road now leased, and of its terminal facilities, upon terms

agreed on between him and the company owning that road. The receiver objected that the terms demanded were exorbitant and oppressive, and could not be assented to by him without an order of the court which appointed him; and it was thereupon agreed that his company should enjoy like privileges, paying the like terminal charges as the four companies, and such rent as the judge should award, and meantime should pay at the same rate as before. The judge declining to act as an arbitrator, the receiver was excluded from the use of the tracks. *Held*, that he had not assented, and was not liable, to pay the same rent as the four companies, during the time that he used the tracks and terminal facilities of the first company.

THIS was a petition by an intervenor in a suit to foreclose a railway mortgage, in order to compel the receiver of the mortgaged property to pay rent. Decree dismissing the petition, from which the petitioner appealed. The case is stated in the opinion.

*Mr. Wager Swayne* for appellant. *Mr. C. Walter Artz* was with him on the brief.

*Mr. Thomas S. McClelland* for appellee.

MR. JUSTICE GRAY delivered the opinion of the court.

Pending a suit in equity by the Farmers' Loan and Trust Company against the Chicago, Pekin and Southwestern Railroad Company, to foreclose a mortgage of its road, the Peoria and Pekin Union Railway Company filed this intervening petition to compel the receiver of the defendant company, appointed in that suit, to pay to the petitioner the sum of $16,231.55 for rent of tracks and terminal facilities at Peoria from February 1, 1881, to March 1, 1882.

From the documents in the record, and the very argumentative and somewhat conflicting affidavits of Cohr, the vice-president and general counsel of the petitioner, and of Hinckley, formerly the president and now the receiver of the defendant, the material facts appear to be as follows:

Peoria and Pekin are ten miles apart, on opposite sides of the Illinois River, and connected by two lines of railway tracks, that of the Peoria and Springfield Railroad Company on the

east side of the river, and that of the Peoria, Pekin and Jacksonville Railroad Company on the west side of the river, and each crossing the river on a bridge. Connecting with these at Peoria or at Pekin are the lines of four other railroad companies, the Wabash, St. Louis and Pacific Railway Company, the Indiana, Bloomington and Western Railway Company, the Peoria, Decatur and Evansville Railway Company, and the Peoria and Jacksonville Railroad Company.

The petitioner was organized in 1880, its whole capital stock being owned by these four companies, one quarter by each. On February 1, 1881, the petitioner, having obtained a lease of the Peoria and Springfield Railroad, and acquired by purchase the Peoria, Pekin and Jacksonville Railroad, and having improved the terminal accommodations and facilities at Peoria, entered into a contract in writing with the four companies aforesaid, by which it leased to them for fifty years the tracks between Pekin and Peoria, with the use of its terminal accommodations and facilities at Peoria; and each of the four companies agreed to pay a yearly rent of $22,500 and a proportionate share of the expenses of maintaining the terminal accommodations at Peoria and of terminal services, according to the business done by each; and it was further agreed as follows:

"Eighth. Any other railroad company, whose road shall now or hereafter run into said city of Peoria, or that shall desire to procure an entrance into said city, shall be allowed to acquire the same rights and privileges as the said several lessees, but no other, and upon no less rental, upon entering into a like contract hereto with the party of the first part, except as to representation in the board of directors of the party of the first part and ownership in its capital stock."

Before February 1, 1881, the trains of the defendant company had been run over the road of the Peoria and Springfield Railroad Company, at a rate of compensation fixed by agreement between the receivers of those two companies.

On February 1, 1881, Cohr, in behalf of the petitioner, demanded of Reed, then the receiver of the defendant company, that he should enter into or contract to pay, during his receivership, the same rent and other charges as the four companies,

and insisted that he had no authority to allow the use of the petitioner's tracks on any other terms. Reed objected that the terms demanded were exorbitant and oppressive, and that he had no authority to assent to them without an order of the court; and it was thereupon agreed that the defendant company should enjoy the use of the tracks and the terminal facilities, and should pay the like terminal charges as the four companies, and should also pay such rent from February 1, 1881, as should be determined by Judge Drummond, upon an application to be forthwith made by Reed, and that until such determination the defendant company should pay at the same rate as formerly paid to the receiver of the Peoria and Springfield Railroad Company, and should pay the residue, if any, when the judge should so determine.

Pursuant to this agreement, Reed made an application in writing to Judge Drummond, who, as Cohr testifies, in December, 1881, or early in 1882, informed him that he declined to decide upon it, and that, unless the defendant settled with the petitioner by March 1, 1882, the petitioner might shut out the defendant from its tracks. Upon notice to that effect, Reed declined to pay, and on March 1, 1882, ceased to use the tracks of the petitioner.

The defendant paid the petitioner for the use of its tracks and terminal facilities from February 1, 1881, to March 1, 1882, at the same rate as previously paid to the receiver of the Peoria and Springfield Railroad Company, amounting to $17,537.83. The petitioner claimed for the same period the sum of $9394.38 for terminal expenses, and the sum of $24,375 for rent, and applied the sum received from the defendant to the payment in full of the first of these claims, and in part of the second, leaving $16,231.55, which the petitioner now sought to recover.

The master, to whom the petition was referred, reported that there was nothing before him which enabled him " to report the amount of compensation which the petitioner should have, except as the result of the conditions upon which the receiver continued to use the property after the attempted making of a contract between the parties resulting in the notice

referred to;" but found "from their relations, and the implied understanding upon the part of the receiver arising from them," that the sum claimed was due from the defendant to the petitioner.

The Circuit Court sustained exceptions taken by the defendant to the master's report, and dismissed the petition. Its opinion, which is not made part of the record, is reported in 18 Fed. Rep. 484. The petitioner appealed to this court.

The only matter in dispute is whether the defendant is liable to the petitioner, by way of rent, from February 1, 1881, to March 1, 1882, for anything more than has already been paid. There is no more ground for implying an assent by the defendant to the claim of the petitioner, than for implying an assent of the petitioner to the position of the defendant. When the petitioner demanded of the receiver of the defendant the like rent, as well as the like rate for terminal expenses, as was to be paid by the four companies, the receiver of the defendant declined to assent to the demand without an order of the court whose officer he was. The parties thereupon came to a temporary arrangement, by which the defendant agreed to pay the terminal expenses demanded, and the parties submitted the question of rent to the Circuit Judge as an arbitrator, and it was agreed that until his determination the defendant should continue to pay the same charges that it had paid before February 1, 1881.

By the terms of that agreement, then, the amount of rent to be paid by the defendant was left uncertain and dependent upon the award of the judge. The affidavit of the petitioner's own witness shows that the judge, after some delay, declined to act as an arbitrator. The judge's view upon the subject appears in the opinion afterwards delivered by him in the Circuit Court, in which he said: " On looking into the question at the time, the judge was of the opinion that the contract which was demanded of the receiver by the Peoria and Pekin Union Company was oppressive in its terms, and doubted whether the receiver could afford to pay the prices then demanded; but at the same time, admitting that the Peoria and Pekin Company was the owner of the property, and that it had

the right to prescribe on what terms the receiver should do his railroad business between Pekin and Peoria and in the latter city, stated that if the receiver would not accept the terms he could not be permitted to have the use of the property of the Peoria and Pekin Union Company." The judge, while he recognized the right of the petitioner, as owner of the property, to exclude the defendant from its use, if the defendant would not accept the petitioner's terms, in no way intimated that upon the facts of the case the defendant could be held to have accepted those terms.

There is no evidence tending to show that the sum paid by the defendant is not all that its use of the property was fairly worth. The rent which each of the four companies, who owned all the stock of the petitioner company, agreed by express contract to pay that company, affords no test of what is a reasonable rent as between the petitioner and a stranger, like this defendant, who had no interest in its stock and was no party to that contract. As observed in the opinion of the Circuit Court, "The Peoria and Pekin Union Company was really owned by the other companies which made the agreement with it, and consequently they were substantially owners of the property of the Peoria and Pekin Company. It was substantially a contract, therefore, made by one party with itself, which it was insisted should be the test of payment by the receiver."

*Decree affirmed.*