### WESTHUS et al. v. UNION TRUST CO. OF ST. LOUIS.

(Circuit Court of Appeals, Eighth Circuit. November 4, 1908.)

No. 2,654.

1. INTERNAL REVENUE (§ 8*) — LEGACY TAX—WAR REVENUE ACTS—CONSTRUCTION—"IMPOSED."

The war revenue act of June 13, 1898, c. 448, §§ 29, 30, 30 Stat. 464, 465, as amended by Act March 2, 1901, c. 806, §§ 10, 11, 31 Stat. 946, 948 (U. S. Comp. St. 1901, pp. 2307, 2308), provided for a tax on legacies to become due and payable in one year after the death of the testator and to be a lien and charge on his property for 20 years. Such provisions were repealed by Act April 12, 1902, c. 500, §§ 7, 8, 32 Stat. 97 (U. S. Comp. St. Supp. 1907, p. 649), with a saving clause as to all taxes imposed thereby prior to July 1, 1902, when the repeal took effect. Act June 27, 1902, c. 1160, § 3, 32 Stat. 406 (U. S. Comp. St. Supp. 1907, p. 652), prohibited the further assessment or imposition of any tax under said act "upon or in respect of any contingent beneficial interest which shall not become absolutely vested in possession or enjoyment" prior to July 1, 1902, and required the refunding of taxes previously collected on any such interests. Held, that where a testator who died in December, 1901, bequeathed a share of his residuary estate in trust, the income to be paid to a son during his life, the life estate of the son in the income of the trust property became absolutely vested in enjoyment at once on the death of the testator, and subject to the tax; that the tax was "imposed" by the statute itself at the time of such vesting without reference to the time when it became due and payable, or to any act of assessment by the internal revenue officers, which was merely an administrative detail necessary to fix the amount but not affecting the time when the tax was imposed or became a lien.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 11, 12; Dec. Dig. § 8.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TAXATION (§ 508*)—LIEN OF TAX—TIME OF TAKING EFFECT.

The time when a tax becomes due and payable under a statute does not necessarily fix the time when it becomes a lien.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 942; Dec. Dig. § 508.*]

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Henry W. Blodgett, U. S. Atty., and Truman P. Young, Asst. U. S. Atty., for the plaintiffs in error.

S. L. Swarts (Montague Lyon, on the brief), for the defendant in error.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, District Judge.

HOOK, Circuit Judge. This was an action by the trust company, as executor and trustee under the will of George A. Madill, deceased, to recover of the collector of internal revenue a tax imposed in respect of a legacy and exacted by him pursuant to the war revenue act of 1898, and paid by the trust company under protest. Judgment went against the collector in the trial court, and this writ of error was obtained to review it.

Briefly stated, the facts upon which the government required the payment of the tax are as follows: George A. Madill of St. Louis, Mo., died December 11, 1901, leaving a will whereby, after the payment of his debts and certain specific legacies, he bequeathed all his property to the trust company in trust, with direction that the net income of the trust estate, after a deduction not material here, should be divided into three equal parts called A, B, and C respectively. We have only to do with part C. The will provided that the trust company should pay the net income represented by part C to the testator's son, Charles A. Madill, at least semiannually during his lifetime, with remainders after his death to other persons upon various contingencies. The will denied Charles A. Madill all right or power to anticipate his portion of the income, or to sell, pledge, hypothecate, or otherwise incumber the same before the trust company had actually paid it to him. There was like denial of control over the principal or corpus of the trust property; and neither income nor corpus was to be subject to the payment of his debts. The trust company made its final settlement and was discharged as executor April 6, 1904. It had previously, in April, 1902, about four months after the death of the testator, paid to Charles A. Madill on account of his legacy the sum of $2,000. In January, 1905, the government exacted the payment of the tax in controversy in respect of the life estate of Charles A. Madill in the income of the trust property.

The statutes bearing on the case are: Sections 29 and 30 of the Act of June 13, 1898, c. 448, 30 Stat. 464, 465 (U. S. Comp. St. 1901, pp. 2307, 2308) popularly known as the "War Revenue Act"; section 11 of the act of March 2, 1901, c. 806, 31 Stat. 948 (U. S. Comp. St. 1901, p. 2308); section 7, 8, and 11 of the act of April 12, 1902, c. 500,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

32 Stat. 97, 99 (U. S. Comp. St. Supp. 1907, pp. 649-652); and section 3 of the act of June 27, 1902, c. 1160, 32 Stat. 406 (U. S. Comp. St. Supp. 1907, p. 652). The tax was prescribed by section 29, and the method of collection by section 30, of the act of 1898. The tax was to remain a lien and charge upon the property of the testator for 20 years unless sooner paid. The act of 1901, amendatory of the prior one, provided that the tax should be due and payable in one year after the death of the testator, and be a lien and charge upon his property for 20 years unless sooner paid. The act of April 12, 1902, repealed those provisions of the acts of 1898 and 1901 with a saving clause as to all taxes that had been "imposed" before July 1, 1902, that being the day the repeal took effect. The lien of all prior imposed taxes and the machinery for collecting them was preserved. The act of June 27, 1902, provided for the refunding of taxes that had been collected on account of contingent beneficial interests which had not become vested in possession or enjoyment prior to July 1, 1902, and forbade the imposition of such taxes in the future.

Upon the facts recited and laws referred to these questions arise: (1) Was the interest of Charles A. Madill in the income of the trust estate a contingent one not vested in enjoyment, and therefore, under the act of June 27, 1902, exempt from the tax? (2) When was the tax "imposed"? Was it automatically "imposed" by force of the statute at the time of the death of the testator and the coming into existence of the conditions upon which it operated, or was there no "imposition" of the tax until it became due and payable, to wit, a year after the testator's death? If the former, the tax was imposed December 11, 1901, and therefore survived the repealing act which took effect July 1, 1902. If the latter, it was not imposed before December 11, 1902, and fell with the act that authorized it. More briefly stated, the questions are: Was the legacy vested in enjoyment? When, under the acts of Congress, is the tax imposed in respect of a legacy vested in possession or enjoyment? It should at once be conceded that the tax is not imposed, does not come into existence, until there is a beneficial vesting of the legacy either in possession or in enjoyment, but the second of these questions proceeds upon the assumption there has been such a vesting, and then inquires: When, as to such a legacy, is the tax imposed? We apprehend the failure to observe that these questions are quite distinct has led to conclusions at variance with those we have reached.

We think the bequest to Charles A. Madill was absolutely vested in enjoyment at the death of the testator. The right of the legatee to the enjoyment of the income was not postponed to the end of a precedent estate, nor was it made to depend upon the happening of any contingency or uncertain event. A present and immediate right passed to him, not subject to devestment short of his death. The interest which passed by the will and in respect of which the tax was imposed was an ordinary life estate in the income of property held in trust, and the beneficiary was a person in being. The intervention of a trustee between the legatee and the physical handling of the corpus of the estate is unimportant in this connection. True, the precise amount of the income depended upon the amount or value of the

corpus of the trust property, the definite ascertainment of which might have to await the payment of debts and the preparation of schedules, but such an uncertainty no more makes a bequest of income contingent than does the fluctuation of rates of interest upon the invested funds of the trust estate. The income bequeathed began to accrue from the day the testator died. In determining the character of a bequest, whether contingent or vested, whether immediately to be enjoyed or the enjoyment of which is postponed, regard should be had to the terms of the will evidencing the purpose of the testator, and not to the adventitious circumstances connected with the administration of the estate which are not mentioned in the will as affecting the testamentary intent; otherwise, through their measurable control of such circumstances, power would rest with executors or trustees to determine when, if ever, the passing of an estate by will should be subject to the payment of a tax imposed by act of Congress. That the legatee was not given control over the income in advance of the actual payment thereof to him did not render the bequest contingent nor prevent it from vesting in enjoyment within the lines of restriction imposed by the testator. The effect of restrictions of that character would be upon the value of the interest which the legatee secured, and concerning that there is no controversy here.

When was the tax imposed? Section 30 of the original act of 1898, as amended by the act of 1901, provided: "That the tax or duty aforesaid shall be *due and payable in one year after the death of the testator and shall be* a lien and charge upon the property of every person who may die as aforesaid for twenty years or until the same shall, within that period, be fully paid," etc. The words italicized were interpolated by the amendatory act; otherwise the clause is as it stood originally in the act of 1898. Upon this the trust company contends that as the testator died December 11, 1901, the tax did not become due until December 11, 1902, and therefore was destroyed by the repealing act of 1902, because it had not been "imposed" within the meaning of the saving clause of that act. Two grounds are urged in support of this contention: First, that the tax cannot be said to have been imposed before it became due and payable; and, second, that the effect of the amendment of 1901 was to postpone the commencement of the lien period for one year from the testator's death, and the tax cannot be said to be imposed before the lien attaches.

The language of section 29 of the act of 1898 is that the persons having the legacies or distributive shares in charge "shall be, and hereby are, made subject to a duty or tax," etc. And we think that when there came into existence the conditions upon which the statute operated the tax was at once imposed, and the estate of the decedent became subject to a lien therefor. Then is when the right to the tax accrued or came into existence, though the tax may not have been at once demandable as due. The act of 1898 specified no time when the tax became due and payable, and the amendment of 1901 that it should become due and payable in one year after the death of the testator was designed to secure uniformity in administration and to give those subject to the tax a reasonable time to adjust the affairs in their charge and make provision for payment. The imposition of a tax and its

maturity are distinct and separate things, and are commonly recognized to be so in schemes of taxation. To impose a tax means to levy it, and we all know that it is not the general custom to make a tax due and enforceable the very day it is imposed or levied. The levy of taxes by state boards and those of governmental subdivisions of the state are generally long in advance of the day they become due, when, if not paid, proceedings for enforcement may be begun. A specific instance in national taxation may be found in the amended act of June 30, 1864, c. 173, § 119, 13 Stat. 283, amended by Act March 2, 1867, c. 169, § 13, 14 Stat. 480, which provided that the income taxes should be levied on the 1st day of March and be due and payable on or before the 30th day of April. When a legacy vests in possession or enjoyment the statute then imposes the tax at the rate therein prescribed. Savings Bank v. United States, 19 Wall. 227, 22 L. Ed. 80, was an action of debt by the government to recover of the bank internal revenue taxes upon undistributed earnings. It was contended by the bank that the action would not lie because the officers of the government had not previously made an assessment, but it was held that no other assessment than that made by the statute was necessary. It is also said in the case before us that the provision for a lien means that the 20-year period begins one year from the testator's death, and the tax cannot be said to have been imposed in advance of the lien. But the conclusion does not follow. A lien may be created to commence from either the imposition or levy of a tax or from its due day as in the judgment of the legislative body may seem advisable. Nor do we think the lien did not begin until a year from the testator's death. The reasonable construction of the act of 1898 before it was amended is that if the estate vested in possession or enjoyment at the death of the testator the lien immediately attached. If the amendment of 1901, that the tax should be due and payable one year after the testator's death, had been inserted after the clause relating to the lien instead of before it, it could hardly be said that a change in the time of the commencement of the lien was intended; and we do not think a different construction results merely because the amendment was inserted before instead of after the lien provision. The lien of a tax may as naturally precede its final due day as the act of imposing or levying the tax itself, and it is quite doubtful that Congress intended there should be a year after the vesting of a legacy or a distributive share of an estate in possession or enjoyment, and therefore, certainly, the subject of a tax, during which no lien or charge existed protecting the government against the distribution of the estate and the consumption or dissipation of that upon which it was intended the lien should rest. At any rate, all who are familiar with systems of taxation know that the initial day of the lien period and the final due day of the tax, after which proceedings to compel payment may be begun, are not inseparable. The provision of the amendatory act that the tax should be due and payable in a year after the testator's death did not mean the tax could not be paid any time within the year, but, on the contrary, that the period granted the executor or trustee for repose or preparation terminated with the year, and thereafter the government might avail itself of any appropriate remedy for enforcing payment. We recog-

nize that grave doubts surround the true construction of these statutes, and also that other courts have reached a different result, and we fully appreciate the desirability of uniformity of decision among the circuits, yet in the absence of a controlling decision by the Supreme Court, our jurisdiction being invoked, we have felt constrained to express our opinion, after according, as we have, to the views of the courts which differ with us, the persuasive force they are justly entitled to. That the right construction is not clear is emphasized by the fact that the Supreme Court has three times affirmed judgments in cases like this by an equal division of the justices who participated. We think that the conclusions reached by the several Circuit Courts, and Circuit Courts of Appeals in cases which will presently be reviewed is due in large measure to a misapprehension of what was decided by the Supreme Court in Clapp v. Mason, 94 U. S. 589, 24 L. Ed. 212, and Mason v. Sargent, 104 U. S. 689, 26 L. Ed. 894.

In Clapp v. Mason, 94 U. S. 589, 24 L. Ed. 212, a testator devised real property to his wife for her life or during occupancy, and thereafter to Mason and Parker. The tax on legacies and successions imposed by the act of 1864 was repealed in 1870, with a saving clause as to taxes the right to which had "accrued." The widow's estate terminated by her death after the repealing act took effect. The Supreme Court held that under the act of 1864 a succession should not be deemed taxable until such time as the successor was entitled to its possession, and consequently no tax upon the devise to Mason and Parker had "accrued" when the act was repealed. It is true that in reaching this conclusion references were made to the express provision of the act of 1864 that the tax should be paid when the successor became entitled to possession and to those of the act of 1866 that the lien on the successor's interest came into being when the tax became due, and that the assessment was to be made within 30 days from the time the party became entitled to possession; but these and various other references to specific provisions of the acts were merely employed as aids to the discovery of the legislative intent, which was found to be that the right to the tax did not accrue until the estate vested in possession. Both vested estates and those in expectancy were within the act of 1864, and it could not certainly be known who would be liable for the tax, upon what value it should be paid, nor at what rate, until the arrival of the time of enjoyment. Therefore it was then the tax accrued. But there is no such question here. The act of June 27, 1902, which was a legislative affirmance of the true construction of the act of 1898, expressly provided that the tax was imposed only on vested interests when vested in possession or enjoyment. It was then the right to the tax arose under the act of 1898.

Mason v. Sargent, 104 U. S. 689, 26 L. Ed. 894, involved a tax imposed in respect of another bequest in the will referred to in Clapp v. Mason. Personal property was bequeathed to trustees in trust for the testator's widow during her life, and on her death to his children. As already observed, the statute imposing the tax was repealed before the widow died, with a saving clause as to taxes the right to which had accrued. The court again held the true construction of the statute there involved to be that the interest of the legatees in remainder was

not subject to the tax until the right arose to reduce it to possession, and that in the case under consideration there was no such right while the widow lived. We do not think it can fairly be said to have been held in either of these cases that the tax was not imposed before the estate vested in possession because or by reason of the fact that the due day of the tax was fixed at that time. The provision fixing the time when the tax should be paid and various other provisions of the statute, of different degrees of significance, were referred to by the court as indicating in their entirety the intent of Congress to be that there was no tax, no right to a tax, until the legatee had the beneficial possession or enjoyment of his legacy. This is far from holding that the mere fixing of the time when the tax should be paid fixed the time when the tax was imposed.

Tilghman v. Eidman (C. C.) 131 Fed. 651, involved the act of 1898 and those following. It was held by the Circuit Court for the Southern District of New York upon the authority of Mason v. Sargent, but without discussion, that, as no tax was due and payable and no lien for any tax rested upon the property of the deceased when the repealing act of 1902 took effect, no tax had been imposed within the meaning of the saving clause of the latter act. This case was affirmed by the Court of Appeals of the Second Circuit (Eidman v. Tilghman, 69 C. C. A. 139, 136 Fed. 141), and by the Supreme Court without opinion, the justices being equally divided (203 U. S. 580, 27 Sup. Ct. 779, 51 L. Ed. 326). The Court of Appeals rested its conclusions in part upon Clapp v. Mason and Mason v. Sargent.

In Vanderbilt v. Eidman, 196 U. S. 480, 25 Sup. Ct. 331, 49 L. Ed. 563, the income of a residuary estate was to be paid to a son of the testator while he was between 21 and 30 years of age. He was then to receive one-half of the principal, and the income on the balance until he was 35, and then the balance was to be given into his possession. The tax was duly paid upon the right to the beneficial enjoyment of the income as provided by the act of 1898, and the controversy arose over the subsequent exaction by the government of a tax on his right to succeed to the whole residue if he lived to the ages of 30 and 35 years respectively. The court held that the deferred rights were not vested in possession or enjoyment and were therefore not the subject of a tax. The case is only pertinent here in respect of the general acquiescence in the liability to the tax of the bequest of the income to trustees in trust for the son. To that extent it bears on the first question discussed—whether the bequest of the income to Charles A. Madill for life was vested in enjoyment. To the same effect are Herold v. Shanley, 76 C. C. A. 478, 146 Fed. 20; Shanley v. Herold, 141 Fed. 423. The question again arose in Philadelphia Trust etc., Co. v. McCoach, 135 Fed. 866. The Circuit Court for the Eastern District of Pennsylvania held that it would follow without discussion the ruling of the Court of Appeals of the Second Circuit in Eidman v. Tilghman. The Court of Appeals of the Third Circuit affirmed the judgment, also without discussion (73 C. C. A. 610, 142 Fed. 120), saying the Circuit Court was right in following the other case because of considerations of comity and uniformity

of decision. It was also affirmed by a divided Supreme Court. 205 U. S. 539, 27 Sup. Ct. 793, 51 L. Ed. 821. In McCoach v. Bamberger (C. C. A.) 161 Fed. 90, the Court of Appeals of the Third Circuit adhered to the position it had ,previously taken. The question also came before the Court of Appeals of the First Circuit in Gill v. Austin, 84 C. C. A. 677, 157 Fed. 234. The court followed the decision of the Court of Appeals of the Second Circuit in Eidman v. Tilghman, and did not itself express an opinion on the question.

United States v. Marion Trust Co., 74 C. C. A. 439, 143 Fed. 301, was decided by the Court of Appeals of the Seventh Circuit. There the owner from whom the succession was derived died September 10, 1900, nearly two years before the act of 1898 was repealed, but because of a dispute between certain persons who claimed to be heirs and the pendency of certain unsettled claims the estate was not distributed until after the repeal took effect. It was held that the tax prescribed by the act of 1898, being an ad valorem tax, could be imposed only by assessment, that an assessment was prerequisite to the existence of the tax, and that no assessment could take place until the estate was ready to pass without diminution so the amount of the tax could be determined. The conclusion was that no tax had been imposed upon the distributive share under consideration when the repealing act took effect. This case was also affirmed by a division of the Supreme Court. 205 U. S. 539, 27 Sup. Ct. 794, 51 L. Ed. 1191. So far as the case holds that the tax is not imposed until the estate vests in possession or enjoyment, we are in entire accord with it, but we think there are serious objections to the position that such circumstances as those mentioned arising during the course of administration postpone the vesting in enjoyment contemplated by the statute. The express provision in the amendatory act of 1901 that the tax "shall be due and payable in one year after the death of the testator" would in itself indicate a contrary intent, at least as respects estates passing by will, and we do not doubt the principle of the provision would also apply to those passing from intestates., Nor do we think there is anything in the statute indicating that an assessment or any other affirmative act by the collector is a necessary prerequisite to the imposition of the tax and the creation of the lien upon the estate of the decedent. When the successor is entitled to the beneficial enjoyment of the estate, though he has it not in possession, the law at once imposes the tax. The ascertainment of the precise amount in dollars and cents is a detail of administration which makes certain the charge previously fixed by law upon the estate.

The judgment of the Circuit Court is reversed, and the cause is remanded with direction to overrule the demurrer of the trust company to the answer of the collector, and for further proceedings consistent with this opinion.